BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALPESH SHAH, Derivatively on Behalf of Nominal Defendant AUTODESK, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW ANAGNOST, KAREN BLASING, REID FRENCH, AYANNA HOWARD, BLAKE IRVING, MARY MCDOWELL, STEPHEN MILLIGAN, LORRIE NORRINGTON, ELIZABETH RAFAEL, RAMI RAHIM, STACY SMITH, and DEBORAH CLIFFORD, <br><br> Defendants, <br><br> and <br><br> AUTODESK, INC., <br><br> Nominal Defendant. | Case No. _____ <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Alpesh Shah ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Autodesk, Inc. ("Autodesk" or the "Company"), against current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breach of fiduciary duties and violations of federal law.  Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, filings with the United States Securities and Exchange Commission ("SEC"), press releases published by and regarding Autodesk, legal filings, news reports, securities analysts' reports about the Company, the securities class action *Barkasi v. Autodesk, Inc., et al.,* Case No. 4:24-cv-02431-YGR (N.D. Cal.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by Plaintiff on behalf of Autodesk against certain of its officers and current and former members of the Company's Board for breaches of their fiduciary duties between at least May 9, 2023 and April 16, 2024, inclusive (the "Relevant Period"), and violation of the federal securities laws, as set forth below.

2.      Autodesk is a multinational software company based in San Francisco, California. Its flagship product is its AutoCAD software, a computer-aided design ("CAD") application used for two-dimensional and three-dimensional modeling.

3.      Throughout the Relevant Period, the Individual Defendants failed to ensure that the Company maintained adequate internal controls over its financial reporting and, as a consequence, issued statements, or permitted the issuance of statements, that were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading. Specifically, the Individual Defendants failed to implement adequate internal controls over financial reporting related to the Company's free cash flow and non-GAAP operating margin practices and, as a result, the Individual Defendants' statements regarding its business, operations, and prospects

were materially misleading and lacked a reasonable basis at all relevant times.

4.     The truth with respect to the Company's deficient internal controls began to emerge on April 1, 2024, when Autodesk filed a notice of late filing on Form 12b-25 with the SEC, indicating that it would be unable to timely file its Annual Report on Form 10-K for the fiscal year ended January 31, 2024. Specifically, the Company stated that "information was brought to the attention of management, which promptly informed the Audit Committee . . . that caused the [Audit] Committee to commence an internal investigation with the assistance of outside counsel and advisors, regarding the Company's free cash flow and non-GAAP operating margin practices."

5.     On this news, the price of Autodesk stock declined 4.13% in one day, closing at $248.71 on April 2, 2024.

6.     On April 16, 2024, the Company issued a press release announcing that the Company would be unable to file its Annual Report within the 15-day extension period provided by Rule 12b-25 of the Securities Exchange Act of 1934 (the "Exchange Act").

7.     On this news, the price of Autodesk stock declined 5.83% in one day, closing at $214.92 on April 17, 2024. As the market continued to digest the news, the price of Company stock declined further, falling 1.99% the following day to close at $210.63 on April 18, 2024.

8.     As a result of the foregoing, the Securities Class Action was filed against the Company and certain of its executive officers, exposing the Company to massive class-wide liability.

9.     Moreover, in light of the breaches of fiduciary duty by the Individual Defendants, most of whom are the Company's current directors, the substantial likelihood of the directors' liability in this derivative action and the Securities Class Action, and that the Individual Defendants are beholden to each other based on their longstanding business and personal relationships, the Individual Defendants do not possess the requisite level of disinterestedness and independence to consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)) and Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9) promulgated thereunder by the SEC.

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

12.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

14.     Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. § 1391 because Autodesk is headquartered in this District, Defendants have conducted business in this District, and a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

*Plaintiff*

15.     Plaintiff is, and has been at all relevant times, a shareholder of Autodesk.

*Nominal Defendant*

16.     Nominal Defendant Autodesk is incorporated under the laws of Delaware with its principal executive offices located at One Market Street, Suite 400, San Francisco, California 94105. Autodesk's common stock is traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "ADSK."

*Individual Defendants*

17.     Defendant Andrew Anagnost ("Anagnost") has served as President, Chief Executive Officer ("CEO") and as a member of the Board of Autodesk since June 2017 and as Co-CEO from

February 2017 until June 2017. Prior to that, Defendant Anagnost served as Senior Vice President, Business Strategy & Marketing from 2012 until June 2017 and as Chief Marketing Officer from December 2016 until June 2017. Defendant Anagnost is named as a defendant in the Securities Class Action. According to the Company's public filings, Defendant Anagnost received $20,649,951 during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant Anagnost beneficially owned 143,840 shares of Autodesk common stock, worth $37,317,849.[1]

18.     Defendant Karen Blasing ("Blasing") has served as a member of the Board of the Company since 2018 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Blasing received $339,992 during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant Blasing beneficially owned 5,603 shares of Autodesk common stock, worth $1,453,642.

19.     Defendant Reid French ("French") has served as a member of the Board since 2017. According to the Company's public filings, Defendant French received $339,992 during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant French beneficially owned 11,324 shares of Autodesk common stock, worth $2,937,898.

20.     Defendant Ayanna Howard ("Howard") has served as a member of the Board since 2019 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Howard received $324,962 during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant Howard beneficially owned 1,039 shares of Autodesk common stock, worth $269,558.

21.     Defendant Blake Irving ("Irving") has served as a member of the Board since 2019. According to the Company's public filings, Defendant Irving received $339,962 during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant

---

[1] Valuations of the Individual Defendants' holdings of Company stock are based on the $259.44 per share closing price of Autodesk's stock on April 1, 2024.

1  Irving beneficially owned 6,627 shares of Autodesk common stock, worth $1,719,308.

2        22.    Defendant Mary McDowell ("McDowell") has served as a member of the Board since

3  2010. According to the Company's public filings, Defendant McDowell received $364,067 during

4  the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024,

5  Defendant McDowell beneficially owned 31,466 shares of Autodesk common stock, worth

6  $8,163,539.

7        23.    Defendant Stephen Milligan ("Milligan") has served as a member of the Board since

8  2018 and serves as a member of the Audit Committee. According to the Company's public filings,

9  Defendant Milligan received $339,992 during the fiscal year ended January 31, 2024 in

10  compensation from the Company. As of March 31, 2024, Defendant Milligan beneficially owned

11  7,922 shares of Autodesk common stock, worth $2,055,283.

12        24.    Defendant Lorrie Norrington ("Norrington") has served as a member of the Board

13  since 2011. According to the Company's public filings, Defendant Norrington received $352,030

14  during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31,

15  2024, Defendant Norrington beneficially owned 5,556 shares of Autodesk common stock, worth

16  $1,441,448.

17        25.    Defendant Elizabeth Rafael ("Rafael") has served as a member of the Board since

18  2013 and serves as Chair of the Audit Committee. According to the Company's public filings,

19  Defendant Rafael received $349,962 during the fiscal year ended January 31, 2024 in compensation

20  from the Company. As of March 31, 2024, Defendant Rafael beneficially owned 2,035 shares of

21  Autodesk common stock, worth $527,960.

22        26.    Defendant Rami Rahim ("Rahim") has served as a member of the Board since 2022.

23  According to the Company's public filings, Defendant Rahim received $291,996 during the fiscal

24  year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant

25  Rahim beneficially owned 959 shares of Autodesk common stock, worth $248,802.

26        27.    Defendant Stacy Smith ("Smith") has served as a member of the Board of the

27  Company since 2011. According to the Company's public filings, Defendant Smith received

28

$430,085 during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant Smith beneficially owned 17,867 shares of Autodesk common stock, worth $4,635,414.

***Officer Defendant***

28.     Defendant Deborah Clifford ("Clifford") has served as Chief Financial Officer of Autodesk since March 2021. Defendant Clifford additionally serves as Autodesk's Executive Vice President. Defendant Clifford is named as a defendant in the Securities Class Action. According to the Company's public filings, Defendant Clifford received $6,372,578 during the fiscal year ended January 31, 2024 in compensation from the Company. As of March 31, 2024, Defendant Clifford beneficially owned 21,194 shares of Autodesk common stock, worth $5,498,571.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     By reason of their positions as officers and/or directors of Autodesk, and because of their ability to control the business and corporate affairs of Autodesk, the Individual Defendants owed Autodesk and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Autodesk in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Autodesk and its shareholders so as to benefit all shareholders equally.

30.     Each director and officer of the Company owes to Autodesk and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

31.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Autodesk, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

32.     To discharge their duties, the officers and directors of Autodesk were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

33.     Each Individual Defendant, by virtue of his or her position as a director and/or officer

owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Autodesk, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

34.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty: to ensure that Autodesk implemented and properly monitored the Company's internal controls over financial reporting, including those relating to Autodesk's free cash flow and non-GAAP operating margin practices; to prevent the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations; and to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

35.     To discharge their duties, the officers and directors of Autodesk were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Autodesk were required to, among other things:

> (a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Autodesk's own Code of Business Conduct

(the "Code of Conduct");

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) remain informed as to how Autodesk conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of Autodesk and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain, implement, and monitor an adequate and functioning system of internal legal, financial, and management controls, such that Autodesk's publicly disclosed financial information would be accurate;

(f) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

36.     Each of the Individual Defendants further owed to Autodesk and the shareholders the

duty of loyalty requiring that each favor Autodesk's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

37.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Autodesk and were at all times acting within the course and scope of such agency.

38.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Autodesk.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

39.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

40.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

41.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company, purposefully, recklessly, or negligently, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

42.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Autodesk, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

43.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.   In taking such actions to substantially assist the

commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

44.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Autodesk and at all times acted within the course and scope of such agency.

## AUTODESK'S CODE OF CONDUCT

45.     Autodesk's Code of Conduct begins with a message from Defendant Anagnost, which states, in pertinent part: "Our success is built on our foundational commitment to **doing what's right** for our colleagues, our customers, our company, our communities, and all our stakeholders. Doing what's right means that we always act honestly and with the highest ethical standards" (emphasis in original).

46.     The Code of Conduct applies to "everyone at Autodesk, including employees, officers, directors, contingent workers, and [Autodesk's] controlled subsidiaries around the world."

47.     Disciplinary measures for violations of the Code of Conduct may include "termination of [the violator's] relationship with Autodesk."

48.     In a subsection titled "WE DO WHAT'S RIGHT," the Code of Conduct states, in pertinent part:

> Following the law and the rules that govern our business is a fundamental tenet of good corporate citizenship and an essential ingredient in building trust with all our stakeholders. Our business partners depend on the integrity of our operations and products, and our shareholders trust us to use our assets responsibly.

49.     In a subsection titled "WE KEEP ACCURATE BUSINESS RECORDS," the Code of Conduct states: "Making good business decisions, fostering our shareholders' trust, and meeting our legal obligations as a public company all require us to keep complete and accurate records of our transactions and business information." In the same subsection, the Code of Conduct continues, listing the following commitments:

- Comply with all accounting and tax rules and regulations
- Record information in a way that fully and accurately reflects every transaction or event
- Validate that our books and records account for all of our assets and liabilities
- Ensure all commitments to customers are fully recorded in contracts and that no side arrangements exist
- Document the nature and timing of transactions accurately
- Ensure transactions and contracts are properly authorized
- Follow Autodesk's disclosure procedures for financial reporting
- Follow policies that relate to maintenance, storage, and disposal of records
- Never destroy or dispose of information that might be needed for an investigation, audit, or legal proceeding

## AUTODESK'S AUDIT COMMITTEE CHARTER

50.     Pursuant to Autodesk's Audit Committee Charter, the purpose of the Audit Committee is to "assist the Board in fulfilling its oversight responsibilities by reviewing the Company's financial reporting, the systems of internal controls, the audit process, and the independent auditor's qualifications, independence, and performance."

51.     In a section titled "**RESPONSIBILITIES AND DUTIES**," the Audit Committee Charter tasks the Audit Committee with the following responsibilities:

- Review the interim financial statements, including the Company's disclosures under MD&A, prior to the filing of the Company's quarterly reports on Form 10-Q as well as the results of the quarterly review and any other matters required to be communicated to the Committee by the independent auditors.

* * *

- Discuss and review the Company's critical accounting policies and key internal accounting controls and procedures

* * *

- Oversee compliance by the Company with regard to establishing and maintaining an adequate system of internal controls over financial reporting and disclosure controls and procedures.

* * *

- Oversee the management of risks associated with the Company's financial reporting, accounting and auditing matters.

## SUBSTANTIVE ALLEGATIONS

52.     Autodesk is a multinational company incorporated in Delaware and based in San Francisco, California that provides software products and services for various industries. Its flagship product is its AutoCAD software, a CAD application used for two-dimensional and three-

dimensional modeling.

53.     Throughout the Relevant Period, the Individual Defendants failed to ensure that the Company implemented and monitored adequate internal controls over Autodesk's financial reporting and, as a consequence issued statements that were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) there existed material deficiencies in Autodesk's internal controls related to the Company's free cash flow and non-GAAP operating margin practices; and (ii) as a result, the Individual Defendants' statements regarding its business, operations, and prospects were materially misleading and lacked a reasonable basis at all relevant times.

54.     On May 9, 2023, Autodesk filed a proxy statement with the SEC, soliciting shareholder approval for, *inter alia*, the election of Defendants Anagnost, Smith, Blasing, French, Howard, Irving, McDowell, Milligan, Norrington, Rafael, and Rahim to the Board. The Proxy Statement represented that the Company's "executive officers oversee *a strong system of internal controls and compliance with corporate policies and applicable laws and regulations.*"[2]

55.     On June 1, 2023, Autodesk filed its quarterly report on Form 10-Q for the first quarter of 2023 (the "1Q23 10-Q"). With respect to the Company's internal controls, the 1Q23 10-Q stated:

> We maintain "disclosure controls and procedures," as defined in Rule 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Our disclosure controls and procedures are designed to ensure that information required to be disclosed in our Exchange Act reports is (i) recorded, processed, summarized, and reported within the time periods specified in the rules of the Securities and Exchange Commission, and (ii) accumulated and communicated to Autodesk management, including our CEO and CFO, to allow timely decisions regarding required disclosure. We conducted an evaluation, under the supervision and with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report on Form 10-Q. ***Based upon this evaluation, our CEO and CFO have concluded that our disclosure controls and procedures were effective to meet the objective for which they were designed and operated at the reasonable assurance level***.
>
> Our disclosure controls and procedures include components of our internal control over financial reporting. Our management, including our CEO and CFO, does not

[2] Unless indicated otherwise, all emphasis is added.

expect that our disclosure controls and procedures or our internal control over financial reporting will necessarily prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within Autodesk have been detected.

56.     On August 29, 2023, Autodesk filed its quarterly report on Form 10-Q for the second quarter of 2023 (the "2Q23 10-Q"). The 2Q23 10-Q repeated the statement contained in the Company's 1Q23 10-Q regarding Autodesk's internal controls:

We maintain "disclosure controls and procedures," as defined in Rule 13a-15(e) and 15d- 15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Our disclosure controls and procedures are designed to ensure that information required to be disclosed in our Exchange Act reports is (i) recorded, processed, summarized, and reported within the time periods specified in the rules of the Securities and Exchange Commission, and (ii) accumulated and communicated to Autodesk management, including our CEO and CFO, to allow timely decisions regarding required disclosure. We conducted an evaluation, under the supervision and with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report on Form 10-Q. Based upon this evaluation, our CEO and CFO have concluded that our disclosure controls and procedures were effective to meet the objective for which they were designed and operated at the reasonable assurance level.

Our disclosure controls and procedures include components of our internal control over financial reporting. Our management, including our CEO and CFO, does not expect that our disclosure controls and procedures or our internal control over financial reporting will necessarily prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within Autodesk have been detected.

57.     On December 4, 2023, Autodesk filed its quarterly report on Form 10-Q for the third quarter of 2023 (the "3Q23 10-Q"). The 3Q23 10-Q repeated the statement contained in the Company's 1Q23 10-Q and 2Q23 10-Q regarding Autodesk's internal controls:

We maintain "disclosure controls and procedures," as defined in Rule 13a-15(e) and 15d- 15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Our disclosure controls and procedures are designed to ensure that information

required to be disclosed in our Exchange Act reports is (i) recorded, processed, summarized, and reported within the time periods specified in the rules of the Securities and Exchange Commission, and (ii) accumulated and communicated to Autodesk management, including our CEO and CFO, to allow timely decisions regarding required disclosure. We conducted an evaluation, under the supervision and with the participation of our CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report on Form 10-Q. Based upon this evaluation, our CEO and CFO have concluded that our disclosure controls and procedures were effective to meet the objective for which they were designed and operated at the reasonable assurance level.

Our disclosure controls and procedures include components of our internal control over financial reporting. Our management, including our CEO and CFO, does not expect that our disclosure controls and procedures or our internal control over financial reporting will necessarily prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within Autodesk have been detected.

58.    On February 29, 2024, the Company issued a press release titled "AUTODESK, INC. ANNOUNCES FISCAL 2024 FOURTH QUARTER AND FULL-YEAR RESULTS" (the "Press Release"). The Press Release revealed the Company's financial results for the fourth quarter and full year of 2024:

Autodesk, Inc. . . . today reported financial results for the fourth quarter and full year of fiscal 2024.

Fourth Quarter Fiscal 2024 Financial Highlights

- Total revenue increased 11 percent to $1.47 billion;
- GAAP operating margin was 21 percent, flat compared to the prior period;
- ***Non-GAAP operating margin was 36 percent,*** flat compared to the prior period;
- GAAP diluted EPS was $1.31, Non-GAAP diluted EPS was $2.09;
- Cash flow from operating activities was $437 million; ***free cash flow was $427 million.***

59.    The statements identified above in ¶¶ 54-58 were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) there existed material deficiencies in Autodesk's internal controls related to the Company's free cash flow and non-GAAP operating margin practices; and (ii) as a result, the

Individual Defendants' statements regarding its business, operations, and prospects were materially

misleading and lacked a reasonable basis at all relevant times.

***The Truth Emerges***

60.     On April 1, 2024, Autodesk filed a notice of late filing on Form 12b-25 with the SEC,

indicating that it would be unable to timely file its Annual Report on Form 10-K for the fiscal year

ended January 31, 2024:

> Autodesk, Inc. . . . is unable to file its Annual Report on Form 10-K for the year ended
> January 31, 2024 . . . within the prescribed time period, without unreasonable effort
> or expense. After the Company's earnings release on February 29, 2024, information
> was brought to the attention of management, which promptly informed the Audit
> Committee (the "**Committee**") of the Board of Directors of the Company, ***that caused
> the Committee to commence an internal investigation with the assistance of outside
> counsel and advisors, regarding the Company's free cash flow and non-GAAP
> operating margin practices***. The Committee is comprised entirely of outside
> "independent directors" as defined by the Nasdaq Stock Market listing standards. The
> investigation is ongoing and all parties are working diligently to complete the
> investigation. ***The Company has voluntarily contacted the Securities and Exchange
> Commission . . . to advise it that an internal investigation is ongoing, and the
> Committee intends to provide additional information to the Commission as the
> investigation proceeds.*** The Company needs further time to assist the Committee in
> its investigation and to review its practices in this regard.
>
> The Company currently does not believe that any of the matters under investigation
> affect any previously issued financial statements or the information in the Company's
> earnings release on February 29, 2024. ***The Company currently expects to file the
> Form 10-K within the 15-day extension period prescribed by Rule 12b-25 under the
> Securities Exchange Act of 1934, as amended***.

61.     On this news, the price of Autodesk stock declined 4.13% in one day, closing at

$248.71 on April 2, 2024.

62.     On April 16, 2024, the Company issued a press release titled "Autodesk provides

update on delayed Form 10-K filing," revealing that the Company would be unable to file its Annual

Report within the 15-day extension period provided by Rule 12b-25 of the Exchange Act:

> ***The Company will not file its Annual Report on Form 10-K for the year ended
> January 31, 2024 (the "Form 10-K") within the 15-day extension period
> contemplated by Rule 12b-25(b) under the Securities Exchange Act of 1934, as
> amended, due to the ongoing investigation. Accordingly, the Company expects to
> receive a notice from The Nasdaq Stock Market ("Nasdaq") that it is not in
> compliance with the timely filing requirement for continued listing under Nasdaq
> Listing Rule 5250(c)(1).*** Such notification letter is not expected to have an immediate

effect on the listing or trading of the Company's common stock on the Nasdaq Global Select Market.

***In accordance with Nasdaq's listing rules, the Company will have 60 calendar days after the receipt of a notification letter from Nasdaq to submit a plan of compliance to Nasdaq addressing how the Company intends to regain compliance with Nasdaq's listing rules,*** and Nasdaq will have the discretion to grant the Company up to 180 calendar days from the due date of the Form 10-K to regain compliance. The Company intends to take the necessary steps to regain compliance with Nasdaq's listing rules as soon as practicable.

63.     On this, the price of Autodesk stock declined 5.83% in one day, closing at $214.92 on April 17, 2024. As the market continued to digest the news, the price of Company stock declined further, falling 1.99% the following day to close at $210.63 on April 18, 2024.

<u>**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**</u>

64.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

65.     Autodesk is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

66.     Plaintiff is a current shareholder of Autodesk and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

67.     A pre-suit demand on the Board of Autodesk is futile and, therefore, excused. At the time this action was commenced, the eleven-member Board was comprised of Defendants Anagnost, Blasing, French, Howard, Irving, McDowell, Milligan, Norrington, Rafael, Rahim, and Smith (the "Director Defendants"). Accordingly, Plaintiff is only required to show that six Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current members are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

68.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

69.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

70.     Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

71.     Defendants Blasing, Howard, Milligan, and Rafael serve on the Company's Audit Committee (the "Audit Defendants") and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial accounting and reporting, the underlying internal controls and procedures over financial reporting, and the audits of the financial statements. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business and the adequacy of its internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

72.     The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Directors to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants

violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

73.     All of the Board's current members derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the Board's current members from calling into question the Director Defendants' conduct. Specifically, none of the Board's current members have taken remedial action to redress the conduct alleged herein. For instance, none of the Director Defendants have sought to enforce the Company's Clawback Policy, which provides that "[a]n executive officer's cash incentive-based compensation may be recovered at the discretion of the Board if that officer has engaged in fraudulent or other intentional misconduct and the misconduct caused a material restatement of our financial statements."

74.     The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

75.     The acts complained of herein constitute violations of fiduciary duties owed by Autodesk's officers and directors, and these acts are incapable of ratification.

76.     The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds i.e., monies belonging to the stockholders of Autodesk. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known

as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Autodesk, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

77.     If there is no directors' and officers' liability insurance, then the directors will not cause Autodesk to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

78.     Thus, for all of the reasons set forth above, all seven, or if not all, then at least five of Autodesk's current directors are unable to consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## <u>COUNT I</u>
### Against the Individual Defendants for Violations of § 14(a) of the Exchange Act and Rule 14a-9

79.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.     The Individual Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

81.     The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the Company's proxy statement filed with the SEC on May 9, 2023 (the "Proxy Statement"). As alleged above, the Proxy Statement contained materially false and misleading statements concerning the Company's materially deficient internal controls.

82.     The Proxy Statement was used to solicit shareholder votes in connection with the election of defendants Anagnost, Smith, Blasing, French, Howard, Irving, McDowell, Milligan, Norrington, Rafael, and Rahim to serve for another one-year term on the Company's Board.

83.     In addition, the Proxy was used to solicit the advisory vote to approve the

compensation of, *inter alia*, Defendants Anagnost and Clifford. While the shareholder vote was non-binding, the Proxy Statement indicated that "[t]he affirmative vote of a majority of the shares present in person or represented by proxy and entitled to vote are required to approve, on an advisory basis, the compensation of our named executive officers."

84.     Describing the Company's "compensation guiding principles," the Proxy Statement indicated that the compensation is performance based: "Our executive compensation program emphasizes variable compensation with both annual and long-term performance components."

85.      The materially false and misleading statements contained in the Proxy Statement regarding the weaknesses in the Company's internal controls therefore misleadingly induced shareholders to vote in favor of the election of defendants Anagnost, Smith, Blasing, French, Howard, Irving, McDowell, Milligan, Norrington, Rafael, and Rahim to serve for another one-year term on the Company's Board, and performance-based compensation to officers of Autodesk, including Defendants Anagnost and Clifford, to which they were not entitled.

86.     The payment of unwarranted performance-based compensation to these Company executives was a waste of corporate assets.

## COUNT II
### Against the Individual Defendants
### For Breach of Fiduciary Duty

87.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

88.     The Individual Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

89.     The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

90.     The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their

fiduciary duties of loyalty and good faith by failing to implement and monitor adequate internal controls over the Company's financial reporting and, as a consequence, issuing or permitting the issuance of materially false and misleading statements in the Company's SEC filings and other public disclosures. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

91.     As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages, including the costs and expenses associated with the conduct of an internal investigation with the assistance of outside counsel and advisors, regarding the Company's free cash flow and non-GAAP operating margin practices.

92.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

**COUNT III**
**Against the Individual Defendants for Aiding and**
**Abetting Breach of Fiduciary Duty**

93.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

94.     By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

1   95.   Plaintiff on behalf of Autodesk has no adequate remedy at law.

2
3

**COUNT IV**
**Against the Individual Defendants for Unjust Enrichment**

96.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

97.   By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Autodesk.

98.   The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Autodesk that were tied to the performance or artificially inflated valuation of Autodesk, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

99.   Plaintiff, as a shareholder and a representative of Autodesk, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

100.   Plaintiff on behalf of Autodesk has no adequate remedy at law.

**COUNT V**
**Against the Individual Defendants for Abuse of Control**

101.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.   The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

103.   As a direct and proximate cause of the Individual Defendants' abuse of control, the Company has sustained substantial damages.

104.   Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VI
### Against the Individual Defendants for Waste of Corporate Assets

105.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

106.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

107.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

108.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

109.    Plaintiff on behalf Autodesk has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

1    E.    Granting such other and further relief as the Court deems just and proper.

2                               **JURY DEMAND**

3        Plaintiff hereby demands a trial by jury.

4                                              Respectfully submitted,

5    Dated: June 7, 2024

6                                              **WOLF HALDENSTEIN ADLER
                                               FREEMAN & HERZ LLP**

7                                              By: */s/ Rachele R. Byrd*
                                                      RACHELE R. BYRD

8
9                                              Betsy C. Manifold
                                               Rachele R. Byrd
10                                             Alex J. Tramontano
                                               750 B Street, Suite 1820
11                                             San Diego, CA 92101
                                               Telephone: 619/239 4599
12                                             Facsimile:  619/234 4599
                                               manifold@whafh.com
13                                             byrd@whafh.com
                                               tramontano@whafh.com

14                                             **RIGRODSKY LAW, P.A.**
                                               Seth D. Rigrodsky
15                                             Timothy J. MacFall
                                               Samir Aougab
16                                             825 East Gate Boulevard, Suite 300
                                               Garden City, NY 11530
17                                             Telephone: (516) 683-3516
                                               sdr@rl-legal.com
18                                             tjm@rl-legal.com
                                               sa@rl-legal.com
19
20                                             **GRABAR LAW OFFICE**
                                               Joshua H. Grabar
21                                             One Liberty Place
                                               1650 Market Street, Suite 3600
22                                             Philadelphia, PA 19103
                                               Telephone: 267-507-6085
23                                             jgrabar@grabarlaw.com

24
25
26
27
28

## <u>VERIFICATION OF ALPESH SHAH</u>

I, Alpesh Shah, am a plaintiff in this action.  I have reviewed the allegations made in the

Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing.

As to those allegations of which I have personal knowledge, I believe those allegations to be true.

As to those allegations of which I do not have personal knowledge, I rely upon my counsel and

their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   5/7/2024
_____

_____

Alpesh Shah